UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

                                        **MEMORANDUM & ORDER**

         - against -                        20-CR-213 (KAM)


TYSHAWN CORBETT, et al,

                Defendants.

----------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

         On June 18, 2020, a federal grand jury in the Eastern

District of New York returned a sealed indictment charging

defendants Tyshawn Corbett, Qawon Allen, Devon Bristol, Marlon

Bristol, and Quandel Smothers with participating in a

racketeering conspiracy, among other crimes.  (ECF No. 1,

Indictment.)  The twenty-count indictment in this case arises

out of the defendants' alleged participation in and association

with the Elite Assassin Millas ("E.A.M."), a set of the Bloods

street gang that operates in East New York, Brooklyn, and

elsewhere.

         Presently pending before the court are: (1) defendant

Marlon Bristol's motion to suppress evidence obtained from his

cell phone pursuant to a search warrant (ECF No. 136 ("Bristol

Mot.")); (2) defendant Quandel Smothers's motion to suppress

evidence obtained from his cell phone pursuant to a search

warrant, for severance, and for a bill of particulars (ECF. Nos. 129 (Notice of Motion), 132, Memorandum of Law ("Smothers Mot.")); and (3) defendant Qawon Allen's motion to suppress a portion of his post-arrest statement and to preclude admission of a prior conviction (ECF No. 135 ("Allen Mot.")). For the reasons set forth below, all of the defendants' motions to suppress are DENIED. Defendant Smothers's motion for severance and for a bill of particulars is also DENIED. Defendant Allen's motion to preclude admission of a prior conviction is DENIED.

**BACKGROUND**

The court assumes familiarity with the background and procedural history of this case, which were described in the court's previous written decisions. *See United States v. Corbett*, No. 20-cr-213 (KAM), 2020 WL 5803243, at *1 (E.D.N.Y. Aug. 21, 2020); *United States v. Corbett*, No. 20-cr-213 (KAM), 2020 WL 5802315, at *1 (E.D.N.Y. Sept. 29, 2020). The court highlights only the background relevant to the issues presently before the court.

On June 23, 2020, defendants Smothers and M. Bristol were arrested pursuant to arrest warrants issued in connection with this case. At the time of their arrests, both defendants were carrying cellular phones, which were seized incident to their arrests. (*See* ECF Nos. 3, 5 (Arrest Warrants); ECF No. 130-4, Declaration of Zachary Taylor, Exhibit D, Affidavit of

2

FBI Special Agent Steve Schiliro in Support of Warrant
Application to Search and Seize ("Schiliro Aff.") ¶ 7; *see also*
ECF No. 131, Declaration of Quandel Smothers ("Smothers Decl.")
¶ 2 ("On June 23, 2020, I was arrested by federal law
enforcement officers. When they arrested me, they took my
cellphone, an Apple iPhone, from me."); Bristol Mot. ¶ 4 ("On
June 23, 2020, federal agents arrested Marlon Bristol [i]n this
case. The agents seized his cellphone, an iPhone, incident to
his arrest.").)

On October 2, 2020 -- 101 days after the initial
seizure of the phones -- an FBI agent applied for a search
warrant to search the cell phones seized from Smothers and M.
Bristol.  (*See* Schiliro Aff.)  The affidavit in support of the
warrant application included footnote 2, advising the court of
the Second Circuit's decision in *United States v. Smith*
("*Smith*"), 967 F.3d 198 (2d Cir. 2020), which addressed, *inter
alia*, the scope of reasonable delay by law enforcement between
the seizure of property, specifically a tablet, and an
application to search the tablet.  (Schiliro Aff. ¶ 7 n.2.)
Footnote 2 of the Schiliro Affidavit stated, among other things,
the agent's understanding that *Smith* did not apply under the
circumstances of this case because the devices had not been
seized based on probable cause (i.e., the officer's plain view
of what appeared to be child pornography on the tablet in

*Smith*).  Rather, M. Bristol's and Smothers's phones had been seized incident to their arrest.  (*See id.*)  Footnote 2 further stated that even if *Smith* did apply, the time between the seizure of the devices and the application for the search warrant was not unreasonable under the factors discussed in *Smith*.  (*See id.*)

On October 2, 2020, United States Magistrate Judge Lois Bloom, signed the search warrant submitted by Special Agent Schiliro.  (*See* ECF No. 130-4 at 35.)  According to the government, law enforcement subsequently executed the warrant to attempt to search the devices, but has not yet succeeded in bypassing the devices' security.  (Gov. Mem. at 37.)  Defendant Smothers represents that the government produced a partial extraction of Mr. Smothers' phone on June 8, 2021, nearly a year after the device was seized.  (Smothers Mot. at 4.)

## LEGAL STANDARD

### I.    The Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  When a defendant moves to suppress evidence that he contends derives from an illegal search, he "bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."  *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) (citations omitted); *see also United States v. Pers.*, No.

09-cr-983, 2011 WL 2019252, at *1 (S.D.N.Y. May 18, 2011). "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Penn. v. Mimms*, 434 U.S. 106, 108-09 (1977) (citations and quotation marks omitted).

A. Seizures of Personal Property

"It is common for the police to temporarily seize a suspect's personal property if they have probable cause and intend to apply for a warrant to search the property for evidence of a crime." *United States v. Smith*, 967 F.3d 198, 202 (2d Cir. 2020). The moving defendants do not challenge the circumstances of the seizures of their cell phones, but instead challenge the delay in seeking a search warrant. When the police seize property in this manner, the Fourth Amendment requires that they act diligently in applying for a search warrant. *Id.* The Second Circuit has acknowledged that courts "demand expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable." *Smith*, 967 F.3d at 205 (quoting *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir.

2015)).

To determine whether a delay is in applying for a search warrant is reasonable, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment rights against the government interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).  In *Smith*, the Second Circuit identified four "[g]eneral relevant considerations" for the court to consider in evaluating the reasonableness of any delay in obtaining a warrant to search seized property: (1) the length of the delay; (2) the importance of the seized property to the defendant; (3) whether the defendant has a reduced property interest in the seized property; and (4) the government's justification for the delay.  967 F.3d at 203.

## II.  Motion to Sever

Federal Rule of Criminal Procedure 8(b) provides that an indictment or information may charge multiple defendants who allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  The Supreme Court has recognized and reaffirmed "a preference in the federal system for joint trials of defendants who are indicted together" because they promote efficiency and prevent the injustice of inconsistent verdicts.  *Zafiro v. United States*, 506 U.S. 534,

537 (1993).  Federal Rule of Criminal Procedure 14(a) provides

that: "If the joinder of offenses or defendants in an

indictment, an information, or a consolidation for trial appears

to prejudice a defendant or the government, the court may order

separate trials of counts, sever the defendants' trials, or

provide any other relief that justice requires."  Fed. R. Crim.

Pro. 14(a).  "Motions to sever are committed to the sound

discretion of the trial judge."  *United States v. Rittweger*, 524

F.3d 171, 179 (2d Cir. 2008) (internal quotation marks omitted).

III.  **Bill of Particulars**

Federal Rule of Criminal Procedure 7(c) provides that

an indictment need only set forth a "plain, concise, and

definite written statement of the essential facts constituting

the offense charged."  Federal Rule of Criminal Procedure 7(f)

allows a defendant to "move for a bill of particulars before or

within 14 days after arraignment or at a later time if the court

permits."  The purpose of a bill of particulars is "to inform a

defendant of charges with sufficient precision to allow

preparation of a defense, to avoid unfair surprise, and to

preclude double jeopardy."  *United States v. GAF Corp.*, 928 F.2d

1253, 1260 (2d Cir. 1991) (citing *Wong Tai v. United States*, 273

U.S. 77, 82 (1927)).

A bill of particulars is not required unless the

"charges of an indictment are so general that they do not advise

the defendant of the specific acts of which he is accused."
*United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)
(internal citation omitted).  "It is important to recall that a
bill of particulars is not a discovery device and 'should not
function to disclose evidence, witnesses, and legal theories to
be offered by the Government at trial or as a general
investigative tool for the defense.'"  *United States v.
Perryman*, 881 F. Supp. 2d 427, 430–31 (E.D.N.Y. 2012).  "[T]he
ultimate test in determining whether a bill of particulars is
appropriate is whether the information is necessary, not whether
it is helpful to the defendant."  *United States v. Wilson*, 493
F. Supp. 2d 364, 370 (E.D.N.Y. 2006) (internal quotation marks
and citation omitted).  "Whether to grant a bill of particulars
is generally a decision entrusted to the sound discretion of the
district court."  *United States v. Ramirez*, 609 F.3d 495, 502
(2d Cir. 2010).

## DISCUSSION

        Defendants filed the following pretrial motions:
defendants Quandel Smothers and Marlon Bristol move to suppress
evidence obtained from their cell phones pursuant to what they
contend is an unreasonably delayed search warrant (*see* Smothers
Mot. at 6-9; Bristol Mot. at 1-5); defendant Qawon Allen moves
to suppress a portion of his post-arrest statement made after he
invoked his right to remain silent, and to preclude admission of

a prior conviction on grounds of relevance and prejudice (*see* Allen Mot. at 4-11).  Defendant Smothers also moves for a severance of his trial from his co-defendants' trial asserting spillover prejudice and for a bill of particulars.  (Smothers Mot. at 9-13.)  The government opposes all of the defendants' pretrial motions.  (*See* ECF No. 139, Government's Memorandum of Law in Response ("Gov. Mem.") at 36-61.)  For the reasons set forth below, the defendants' motions to suppress are DENIED. Defendant Smothers's motion for severance and for a bill of particulars is DENIED.  Defendant Allen's motion to preclude evidence of a prior conviction is DENIED.

## I.    Defendants Smothers's and M. Bristol's Motion to Suppress Evidence Obtained from the Seized Cell Phones

Defendants Smothers and M. Bristol move to suppress evidence obtained from their cell phones pursuant to a search warrant because the government unreasonably delayed in obtaining a search warrant to search their phones.  (*See* Smothers Mot. at 6-9; Bristol Mot. at 1-5.)  As noted above, to determine if any delay was reasonable, the court is guided by *United States v. Smith*, which sets out the four factors courts should use to determine the reasonableness of delays in securing warrants in the context of the seizure of a defendant's tablet.

> [T]he following four factors are generally relevant to whether the police have waited an unreasonable amount of time before seeking a search warrant: [1] the length of the delay,

[2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay.

967 F.3d at 206. Applying these factors to the present case, the court finds that the although the length of the delay in seeking the search warrant for the two cell phones was unreasonable, there was no constitutional violation and the exclusionary rule will not be applied under these circumstances.

As an initial matter, the court rejects the government's contention that the Second Circuit's decision in *Smith* is solely confined to delays arising from seizures based on probable cause. The government asserts that *Smith* does not apply here because "seizures incident to arrest are reasonable because of the fact of the arrest, even without any additional justification." (Gov. Mem. at 43.) In other words, the government appears to argue that if items are seized incident to an arrest, the constitutional parameters for unreasonable delays in seeking a search warrant in *Smith* and other cases are inapplicable and, thus, an officer need not act diligently to obtain a search warrant for the seized item.

Upon a review of *Smith* and the case law, the court concludes that the government failed to properly apply the Supreme Court's holding in *Riley v. California*, which permits the warrantless *seizure* of a cell phone incident to an arrest,

10

but requires a warrant to search it.  573 U.S. 373, 396 (2014) (upholding the seizure of a cell phone but requiring a warrant to search the phone).  Put simply, even if the officers were properly authorized to *seize* the defendants' phones incident to the defendants' arrests, the officers were obligated to obtain a warrant in order to *search* the phones.

In *Riley*, the Supreme Court considered the authority of the police to conduct a search of a person's cell phone when seized incident to the arrest of the person.  *Id.* at 382-85. The Supreme Court explained that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" because cell phones contain an immense amount of data and highly personal information.  *Id.* at 393-97.  For this reason, the Supreme Court explained that "[o]ur answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple -- get a warrant."  *Id.* at 403.  Accordingly, applying *Riley* to the instant case, the fact that the officers may have properly *seized* defendants' phones incident to the defendants' arrests, does not mean that the officers were authorized to *search* said phones without a proper warrant.  *See id.* at 402 ("[A] warrant is generally required before such a search, even when a cell phone is seized incident to arrest.").  In seeking a warrant

application, the Second Circuit has ruled that "the police may not unreasonably delay in seeking a warrant." *Smith*, 967 F.3d at 205. Hence, the Second Circuit's decision in *Smith* equally applies in circumstances where, as here, a delay occurred between the time when the cell phones at issue were seized incident to the defendants' arrest, and the search warrant was approved by the court, regardless of whether the seizures were affected incident to an arrest or with probable cause.[1] The court addresses each factor discussed in *Smith* below:

A. Length of the Delay

Here, it is undisputed that 101 days elapsed between June 23, 2020 (the date of defendants' arrest) and October 2, 2020 (the date the government applied for a search warrant). (*See generally* Schiliro Aff.; *see also* ECF Nos. 3, 5 (Arrest Warrants).) In *Smith*, the Second Circuit concluded that a month-long delay between the seizure of property and the application for a search warrant was unreasonable. 967 F.3d at

---

[1]    The Second Circuit has explained that the law "demand[s] expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable." *Smith*, 967 F.3d at 205 (quoting *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015)). This court agrees that unreasonable delays in obtaining a warrant would "undermine the criminal justice process" by preventing "the judiciary from promptly evaluating and correcting improper seizures." *Id.* Accordingly, the court concludes that policy reasons underlying the Fourth Amendment also support the conclusion that *Smith* and relevant cases apply to unreasonable delays in obtaining warrants even for items seized incident to arrest.

206-07 ("We give independent weight to the length of the delay, and we conclude that a month-long delay well exceeds what is ordinarily reasonable."). The government acknowledges that "the first factor (the length of time) would likely weigh against a finding of reasonableness" (Gov. Mem. at 45), and the court agrees. Accordingly, the court concludes that the 101 day delay in this case was presumptively unreasonable. Thus, this factor weighs in favor of defendants.

B. The Importance of the Cell Phones to Defendants

The second factor considers the importance of the seized property to the rightful owner of the property and the "nature of the property seized." 967 F.3d at 207. Consistent with Supreme Court precedent and the Second Circuit's reasoning in *Smith*, this court recognizes that the search and seizure of "personal electronic devices like a modern cell phone" implicate "special concerns" due to the immense amount of private material saved on electronic devices. 967 F.3d at 207-08. Here, both defendants assert that they keep "significant amount of personal information" on the phones and want the phones "returned." (Smothers Decl. ¶ 3; Bristol Mot. at 2.) Thus, the court finds that the seized phones are of significant importance to the defendants.

Nonetheless, in evaluating the second *Smith* factor, courts have also considered whether defendants requested the

13

property be returned or could have retained the seized property. *See Smith*, 967 F.3d at 207 (considering whether defendant had "alternative electronic devices that could serve the same functions" and whether defendant "request[ed] the return of the" device); *United States v. William Tisdol*, No. 20-cr-264 (JBA), 2021 WL 2349753, at *4 (D. Conn. June 9, 2021) (reasoning that "while cell phones generally are of significant importance to their owners, the importance of this cell phone to [defendant] was diminished at this time because he was incarcerated and would not have been able to access it even if it had not been seized").  In the affidavit accompanying the application for the search warrant, the government asserted that a delay was not unreasonable because "the owners of the [cell phones] have been in jail since the time of their arrest and therefore it would not have been possible to return the [cell phones] to them at any time since the seizure."  (Schiliro Aff. at 5 n.1.) Moreover, in opposition to defendants' motions to suppress, the government argues that "neither Smothers nor Bristol make any claim that they requested that these devices be returned to them, their attorneys or their families."  (Gov. Mem. at 45.)

Here, the court concludes that because defendants Smothers and M. Bristol have been incarcerated since their arrests on June 23, 2020, their "continued inability to possess or use the cell phones while incarcerated significantly

diminishes the importance of their prompt return." *United States v. Green*, No. 18-cr-121 (RJA) (MJR), 2021 WL 1877236, at *6 (W.D.N.Y. Feb. 3, 2021), *report and recommendation adopted*, No. 18-cr-121, 2021 WL 1856949 (W.D.N.Y. May 10, 2021). Moreover, although the defendants now claim that they want their phones "returned" (Smothers Decl. ¶ 3; Bristol Mot. at 2), defendants have not sought the return of the cell phones since their arrest and incarceration as far as the record reflects. *See In re Application for Search Warrant*, No. 20-mj-00855 (SALM), 2020 WL 6875048, at *4 (D. Conn. Nov. 23, 2020) (finding, under the *Smith* analysis, that the importance of the seized property to the target weighed "strongly" in favor of the government, because "the target has been criminally charged and remains detained pending trial [and] [a]s such, he would be unable to make use of the devices, even if they had not been seized.") Accordingly, although the court acknowledges that the cell phones are of significant importance to defendants, for the reasons stated above, the court finds that the second factor weighs in favor of the government.

C. Defendants' Reduced Property Interest in the Phones

As to the third factor, the court considers whether the defendants "had a reduced property interest in the seized item." *Smith*, 967 F.3d at 206. In the affidavit supporting the application for the search warrant, which the court notes was

focused on probable cause rather than defendants' interests, the government asserts that any delay was reasonable because the phones "retain[] investigative or prosecutorial value regardless of any further search of [their] contents"; specifically, the phones have an International Mobile Equipment Identity number that "can be used to tie the Devices to phone records or online accounts, and the owners' possession of the Devices may therefore be physical evidence linking them to those records or accounts." (Schiliro Aff. at 5 n.1 (citing *Smith*, 967 F.3d at 209).) Moreover, according to the Schiliro Affidavit, the government continued its investigation after the arrests of Messrs. M. Bristol and Smothers. In other words, the government appears to assert that the delay in obtaining a warrant was reasonable because the phones retain "investigative or prosecutorial value regardless of any further search of its contents." *Smith*, 967 F.3d at 209. In opposition of defendants' motion to suppress, the government also argues that "defendants have no possessory interest in their phones as both are in custody and are prohibited from possessing the devices" and, thus, have reduced property interests in their phones. (Gov. Mem. at 45.)

Notwithstanding the government's varying explanations justifying the delay in obtaining a search warrant, the court agrees that the officers' authority to lawfully seize the phones

incident to arrest and the probable cause for arrest that existed at the time of the defendants' arrest reduced the defendants' possessory interests in the phone. *Cf. Riley*, 573 U.S. at 391 ("The search incident to arrest exception rests not only on the heightened government interests at stake in a volatile arrest situation, but also on an arrestee's reduced privacy interests upon being taken into police custody."). Here, it is undisputed that the phones were lawfully seized incident to the defendants' arrests pursuant to arrest warrants and, accordingly, the court finds that the defendants had a reduced property interests in the phones. Nonetheless, even though defendants' property interests may have been reduced due to their lawful arrests and seizures of their phones, defendants still retained some possessory interests in the phones. Hence, because the government has offered reasonable explanations for the defendants' reduced property interests and asserted that the phones retained independent investigatory value as previously stated in the agent's affidavit, the court concludes that this factor favors the government.

        D. The Government's Justification for the Delay

        Finally, as to the fourth factor, as noted above, the government argues that the delay in obtaining a search warrant was justified because the government "was continuing to investigate the defendants' crimes during the period between the

seizure and the search warrant application." (Gov. Mem. at 46.)
The affidavit submitted in support of the warrant application
similarly stated that "the investigation of this case continued
after the seizure of the Devices, making it reasonable to delay
applying for a warrant so that newly discovered evidence could
be included in the warrant application." (Schiliro Aff. at 5
n.1.) In support, the affiant cites to "information set forth
in paragraphs 54 and 57" of the warrant application, as new
evidence discovered "months after the seizures." (*Id.*)

        In response, the defendants argue that, contrary to
the affiant's representation in the warrant application that the
seized phones led to new evidence, the allegations recited in
the warrant application also appear in the government's August
24, 2020 opposition to defendant Smothers's motion for bail --
39 days before the warrant application was submitted. (Smothers
Mot. at 9 (citing ECF No. 88).) Thus, defendants assert that at
least 39 days elapsed between the government obtaining any
additional information supporting probable cause and its
application for the search warrant on October 2, 2020. (*Id.*)

        Here, a review of the warrant application on October
2, 2020 and the government's opposition to defendant Smothers's
bail application on August 24, 2020 (ECF No. 88), indicates that
the government had obtained new evidence after the arrest of
Messrs. M. Bristol and Smothers during the government's

continuing investigation.  Specifically, the government highlights that it discovered certain May 2020 communications from another alleged E.A.M. member's phone concerning "a new gang pledge" and a video of an assault. (Gov. Mem. at 47-48 (citing Schiliro Aff. ¶ 57).)  Moreover, following the defendants' arrests in June 2020, the government also cites to recorded prison calls where defendant M. Bristol apparently attempted to enlist someone to delete data on his phone via the cloud account.  (*See* Schiliro Aff. ¶ 54.)  Although, as the defendants note, the government may have had access to some of this evidence before the date the warrant application was filed, the court finds that the delay was reasonable in light of the government's continuing investigation.  Indeed, in stark comparison to other cases where no explanation for the delay was stated by the government, here, the government provided a reasonable explanation that the investigation of the alleged enterprise and its associates and members was continuing as justification for the delay in filing a warrant application. *See Tisdol*, 2021 WL 2349753, at *5 (fourth factor weighed in favor of defendant where government provided "no explanation for the delay" (internal quotation marks omitted)); *In re Application for Search Warrant*, 2020 WL 6875048, at *7 (fourth factor weighed in favor of defendant where government offered "no particular justification for the delay").  For these

reasons, the court concludes that this factor weighs in favor of the government.

In sum, the court finds that the first *Smith* factor -- the length of the delay -- weighs in favor of the defendant. Nonetheless, the second, third, and fourth factors -- the importance of the seized items, the defendants' reduced property interests in the phones, and the justification for the delay -- weigh in favor of the government. After balancing the four factors discussed above, the court concludes that although the 101 day delay was unreasonable, such delay did not amount to a Fourth Amendment violation in light of the other factors weighing in favor of the government. *See Green*, 2021 WL 1877236, at *8 (finding no unconstitutional delay in obtaining a warrant where the balance of *Smith* factors weighed in favor of the government); *In re Application for Search Warrant*, 2020 WL 6875048, at *7 (finding the issuance of the search warrant proper, despite the delay in filing a warrant application, where the second and third *Smith* factors weighed strongly in favor of the government). *But see Tisdol*, 2021 WL 2349753, at *5 (concluding that the government's delay in obtaining a warrant was unreasonable and suppressing evidence where only one of the four *Smith* factors weighed in favor of the government). Accordingly, because there was no unconstitutional delay, the

court declines to suppress the evidence obtained from the seized phones.

### E. The Exclusionary Rule

Even assuming the instant delay violated the Fourth Amendment, the court must decide if the evidence obtained from the phones should be suppressed.  The exclusionary rule, an equitable remedy designed to deter misconduct by law enforcement, "applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Smith*, 967 F.3d at 211.  In *Smith*, although the court found the delay unreasonable, the Second Circuit declined to apply the exclusionary rule because the record did not indicate that the officer in question acted with deliberate indifference to the defendant's constitutional rights; that his behavior was reckless or grossly negligent; or that the delay was related to recurring or systemic negligence. 967 F.3d at 211-12.

For the reasons set forth above, the court concludes that the delay in obtaining a warrant to search the defendants' cell phones did not violate the Fourth Amendment.  Nonetheless, even assuming that a Fourth Amendment violation did occur, this court further concludes that suppression would not be warranted because there is no basis here to apply the exclusionary rule.

As in *Smith*, the record before the court is devoid of evidence that the officers' delay in obtaining a search warrant was deliberate, reckless, or grossly negligent.  Similarly, there is no evidence of systemic or recurring negligence.  Instead, the record shows that during the period between defendants' arrest and the warrant application, the officers continued to investigate and developed further evidence allegedly indicating that the phones would contain evidence of the defendants' past crimes.  (*See* Schiliro Aff. ¶¶ 54-57.)  Accordingly, even assuming that a Fourth Amendment violation did occur, this court further concludes that suppression would not be warranted here for the foregoing reasons.[2]

## II.    Defendant Allen's Motion to Suppress Post-Arrest Statements and to Preclude his § 924(c) Conviction

Defendant Allen moves to suppress a portion of his post-arrest statement, arguing certain statements were obtained in violation of Allen's rights under *Miranda v. Arizona*, 384

---

[2]    Furthermore, the government asserts that even if the seizure here had been rendered unreasonable by the delay in applying for a search warrant, suppression is not warranted under the good faith exception to the exclusionary rule.  (Gov. Mem. at 48-50.)  Under the good faith exception, the exclusionary rule and its remedy of suppression does not apply where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant."  *United States v. Leon*, 468 U.S. 897, 922 (1984).  Although the court need not reach the good faith exception for the reasons stated above, the court finds that an objectively reasonable officer could have believed the circumstances here would not constitute unreasonable delay under *Smith* for the reasons explained in the warrant application.  Moreover, the four circumstances precluding application of the good faith exception are not relevant or applicable based on the record before the court.  *See United States v. Galpin*, 720 F.3d 436, 452 (2d Cir. 2013) (explaining four circumstances in which the good faith exception would not apply).

22

U.S. 436 (1966).  (*See* Allen Mot. 4-8.)  In addition, defendant Allen moves to preclude admission of his prior conviction for possessing and brandishing a firearm during the January 26, 2019 robbery of a marijuana dealer.  (*Id.* at 9-11.)

The government disagrees with defendant Allen's characterization of the facts regarding his motion to suppress the post-arrest statements, but asserts that this court need not "resolve this disagreement because the government does not intend to admit the challenged portion of the statement at trial as part of its case-in-chief."  (Gov. Mem. at 61.)  Moreover, the government opposes defendant's motion to preclude his prior § 924(c) conviction because it is premature and courts have permitted the introduction of uncharged crimes and other acts in racketeering cases as direct evidence to establish an enterprise or a pattern of racketeering.  (*Id.* at 59-61.)

As to defendant Allen's motion to suppress portions of his post-arrest statements, the government has represented that it does not intend to use the challenged testimony in its case-in-chief at trial.  (Gov. Mem. at 61.)  Accordingly, with defendant Allen's consent, the court denies without prejudice defendant Allen's motion to suppress the disputed portion of his post-arrest statements made during his custodial interrogation. (ECF No. 145, Defendant Qawon Allen's Reply Letter at 12.)

With respect to defendant Allen's motion to preclude introduction of his § 924(c) conviction, the court denies the motion.  Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  Moreover, the evidence may be offered as direct evidence of the racketeering enterprise and a defendant's relationship to the enterprise.

Here, defendant Allen was charged, along with others, with conspiring to commit racketeering as members E.A.M. from 2009 to 2016, supported by, *inter alia*, drug sales and fraud, conspiracy to possess weapons to protect the drug activity, and multiple shootings (Mr. Allen is charged in one of the shootings).  (*See* ECF No. 1, Indictment.)  The government represents that it intends to introduce evidence of Mr. Allen's prior conviction for possessing and brandishing a firearm during the January 26, 2019 robbery with another E.A.M. member to prove, among other things, "the existence and nature of the charged racketeering enterprise; membership in the enterprise; the involvement of Allen and others in the affairs of the enterprise; the relationships between defendants and their

24

coconspirators; and the methods and means employed by members and associates of the enterprise."  (Gov. Mem. at 60.)

At this time, the court concludes that the government may permissibly introduce evidence of Mr. Allen's prior conviction for the reasons stated by the government.  *See United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (explaining that evidence of "prior criminal conduct with [] co-conspirators was relevant to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (internal quotation marks omitted)); *cf. United States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003) ("It is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise.").  Accordingly, the court denies defendant Allen's motion to suppress his prior conviction.

## III.  Defendant Smothers's Motion to Sever

Defendant Smothers also moves to sever his trial from the trial of his co-defendants to prevent spillover prejudice because "the bulk of the trial will concern violent crimes, including a murder, allegedly involving Mr. Smothers' co-defendants, but not Mr. Smothers."  (Smothers Mot. at 9-11.)

Defendant Smothers asserts that because he is charged in only two counts, "there is a very real danger that spillover prejudice will prevent the jury from fairly assessing Mr. Smother's guilt or innocence." (*Id.* at 10.) The court denies defendant Smothers's motion for severance for the reasons set forth below.

There is a strong preference in favor of joint trials "where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). In such circumstances, a district court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Even then, however, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

Here, defendant Smothers has not identified a specific trial right that would be compromised by a joint trial or any substantial prejudice that would result from a joint trial. To the extent that Smothers claims that a joint trial will result in prejudice from "spillover" that may occur during the trial, defendant may request appropriate limiting instruction, or other remedial measure, at trial. Although defendant contends that

"[e]vidence concerning the alleged murder of Michael Tenorio . . . will have a significant impact on the jury" to convict defendant "based on his association with his co-defendants," (Smothers Mot. at 10-11), the court finds that a limiting instruction to the jury to consider the defendants individually is sufficient to alleviate any potential spillover prejudice. *See United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (district court's explicit instruction that jury consider defendants individually remedied spillover prejudice); *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997) (noting that spillover prejudice may be cured through clear judicial instructions); *United States v. Rivera*, No. 09-cr-619, 2011 WL 1429125, at *6 (E.D.N.Y. Apr. 13, 2011) (noting "defendants may request any appropriate limiting instruction, or other remedial measure, at trial" to avoid spillover prejudice). Moreover, even if Mr. Smothers was tried separately, the same evidence regarding the RICO enterprise, its members, purpose, and activities would be admissible. Accordingly, defendant Smothers's motion to sever his trial is denied.

**IV.  Defendant Smothers's Motion Seeking a Bill of Particulars**

Defendant Smothers also moves for a bill of particulars, asserting that the indictment provides insufficient detail for him to prepare his defense and that a bill of particulars is necessary to avoid double jeopardy. (Smothers

Mot. at 11-13.)  The government opposes defendant Mr. Smothers's request, arguing that "the Indictment, the discovery and the government's filings," taken together, are sufficient "to apprise Smothers of the nature and function of the charged crimes."  (Gov. Mem. at 58.)

Here, defendant Smothers "seeks evidentiary details and the precise nature of the evidence the government intends to offer at trial, e.g., specific names, conduct and dates and times of that conduct." *United States v. Rivera*, No. 09-cr-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011).  Courts have routinely denied demands for particulars as to the "wheres, whens and with whoms" of the alleged criminal offense. *Id.; see also United States v. Shteyman*, No. 10-cr-347 (SJ), 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) ("[C]ourts have routinely held that the 'wheres, whens and with whoms' of a charged offense are beyond the proper scope of a bill of particulars."). Specifically, defendant Smothers seeks "the date, time and location of the alleged 'multiple acts' of identification document fraud, access device fraud, drug trafficking, and murder or attempted murders (to the extent the details of such attempted murders or murders are not set forth in Counts Three through Twenty" of the indictment."  (Smothers Mot. at 12.) Defendant also seeks "the date, time and location of Mr. Smothers' alleged possession of a firearm between 2006 and

2019." (*Id.*)  In light of the principles stated above, the court concludes that the information sought exceeds the proper scope of a bill of particulars. *See United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (upholding the denial of a bill of particulars as to the "exact time and place of each alleged act associated with each offense in identified in the indictment").

In any event, the government also notes that its letters, discovery, and documents in the record have already provided the information sought by defendant. (*See* Gov. Mem. at 58.)  For instance, the government's detention letter dated June 24, 2020 in opposition to defendant Smothers's motion for bond dated August 24, 2020  (ECF Nos. 88, 88-1) provides details regarding the relevant acts of violence he and the defendants are alleged to have participated in as part of their alleged membership in E.A.M.  In addition, the discovery exchanged in this case also contains detailed affidavits accompanying warrant applications describing the types of evidence supporting the criminal charges in the indictment. (*See* Schiliro Aff.; ECF No. 130-2; ECF No. 130-3.)  Accordingly, defendant Smothers has been adequately notified of the charges against him, and he has the information necessary to prepare his defense.  For these reasons, the court denies defendant Smothers's request for a bill of particulars.

## CONCLUSION

For the foregoing reasons, the defendants' motions to suppress are DENIED.  Defendant Smothers's motion for severance and for a bill of particulars is DENIED.  Defendant Allen's motion to preclude admission of a prior conviction is DENIED.

SO ORDERED.


_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    Brooklyn, New York
          September 30, 2021